## Case No. 10,244.

### NICHOLS v. HARRIS.

[1 MacA. Pat. Cas. 362.]

Circuit Court, District of Columbia. Jan., 1855.

PATENT OFFICE APPEALS — REVERSAL FOR ERRONEOUS ADMISSION OF DEPOSITIONS — REHEARING—INTERFERENCES—IMPROVEMENTS IN LAMPS.

[1. Where an appeal is reversed, not on the merits, but because some of the depositions considered were taken before a magistrate who was disqualified by interest to take them, the commissioner is not bound to issue a patent to the appellant, but may grant a rehearing and order the depositions taken anew.]

[2. An interference is properly declared where the object of both parties is to guard against the danger from the use of camphene in common glass lamps, by placing in the bowl a metallic lining to hold the camphene if the glass is broken, the only difference being that one of them covers the top of the lamp with a glass dome, while the other uses a metal dome fastened to the inner metallic lining; for this difference is immaterial.]

[This was an appeal by James R. Nichols from a decision of the commissioner of pat-

ents, in an interference proceeding, awarding priority to Elbridge Harris in respect to the invention of an improvement in lamps.] The patent issued to Harris, No. 12,550, March 20th, 1855. See 4 Pat. Off. Rep. 1855, p. 110.

Hubbard & Pinkerton, for appellant.
A. B. Stoughton, for appellee.

MORSELL, Circuit Judge. This case was once before brought before me on appeal, by referring to which [Case No. 10,243] a particular statement will appear. The objection stated and relied on in the reasons of appeal was to the admissibility of the testimony. This objection was sustained, and the decision of the commissioner based thereon reversed, and the case remanded for further proceeding. There was no decision by me on the merits of the question, because under such circumstances it was not deemed necessary. The commissioner states in his certificate to me that he proceeded subsequently to order the testimony to be again taken, with full opportunity to both parties for that purpose, and the trial thereof was appointed to take place on the third Monday of July, 1854; at which time the testimony was duly laid before him and the parties heard; on which subsequent occasion he says that he decided that so far as the parties do interfere, priority of invention rests with Harris, who seems entitled to date as far back as May 19th, 1852. Again the commissioner says: "It would seem that the interference was declared on just and sufficient grounds, inasmuch as they both claimed making and using a metallic lining to glass lamps for burning camphene. If there be anything over and above this single idea appertaining to either party, such party will be entitled to a patent therefor if, upon due examination, he shall be found to be the original and first inventor of the same."

This decision and the reasons of appeal, together with all the papers and evidence, were again produced before me, and the case submitted on written argument. The first reason of appeal relates to what is supposed to be the effect of the reversal just alluded to; that is. that it was the duty of the commissioner to have proceeded in the case by ordering a patent, according to the provisions of the patent laws, to issue to the said Nicols for the invention claimed by him; and that the subsequent rehearing was illegal, and the decision founded on such rehearing void. This is a misapprehension, as before stated. The merits of the case were not considered; it was not so intended. I know of no rule of patent law that warrants such an inference. It was supposed that, for the ends of justice, an opportunity should be afforded to the parties to have their testimony fully and impartially taken. This was thought to be a matter of common right, and which on the former occasions sufficiently appeared not to have been done. The commissioner was, therefore. entirely correct in making his order to that effect.

The second reason is, that upon the evidence it appears that the said Nichols was the first original inventor of lining "all the inside of the reservoir of a glass lamp with metal."

The third reason is, that the testimony of John Newell, one of the appellee's witnesses, ought not to have had any weight with the commissioner by reason of the suspicious conduct of the witness in testifying on the former trial. As it respects priority, the appellant's evidence does not satisfactorily prove his invention to have been earlier than the 15th of July, 1852. The evidence on the part of the appellee shows his to have been at least as early, if not earlier, than the 10th of June, 1852; so that the only question is as to the interference.

Emmerson, a witness on the part of Doctor Nichols, describes the invention as a common glass lamp, which he assisted him in cutting off the top of, for the purpose of lining it with metal. Moses H. Pearson, another witness on behalf of the same party, says: "I know of some improvements made by James P. Nichols. Some time before September, 1852, Doctor Nichols brought a glass lamp into my shop with the top broken off, and wanted me to make a lining to it. I made it at that time; it was a common glass-stand lamp. He wanted me to make a lining to it so that he could put the glass on again which he had broken off. I made the lining to it as well as I could. but could not make it so that the glass pieces would fit on again. He said it was of no consequence whether the top fitted on it, although he should like it so that the top would fit on again." The lamp lay on the shelf in the shop for a number of weeks, and he did not come after it during that time. Witness supposes the reason he did not come after it was because he had gone to the White Mountains. To the fifth interrogatory he says that he did not think those pieces of glass if produced would, with the other parts of the glass, have entirely covered the metal, because some of the pieces of glass were gone; but they would have covered it had it all the pieces of glass been there. It was the intention to make the tin fit the glass; but witness could not make it an entire fit, as some of the pieces of glass were gone. Had the dome of the lamp been taken off whole so that it could have been put on whole again he would have made the lining for it.

On the part of the appellee, Gardiner S. Coffin describes Harris' lamp thus: The improvement was a metallic lining inside of a glass lamp. He (Harris) drew out on a piece of paper with a pencil a description of it, and gave witness to understand what the benefit was. Harris stated that in case the lamp should be broken the fluid would not spill. He asked witness' opinion in regard to it. A drawing of the lamp was made on paper by Mr. Harris. Then there was a drawing of a metallic lining; and this metallic lining which contained the fluid was to be placed inside of the glass part of the lamp and cemented, so that in case of the lamp being broken the fluid would not spill or ignite. Each separate part was drawn and described, and corresponded with the plan made by Leonard. He then described it so that witness could have made one, or caused one to be made, from his said description or explanation. This witness is corroborated by Leonard and Farewell, who describe the improvement as follows: Common glass lamps were to be made in a different shape by having them larger at the top than at the bottom—not oval, as usual—(leaving off that part of the glass—the oval part), and having instead an oval metallic top fastened to an inner metallic lining, made so as to drop into the glass, to be fastened at the top of the glass by cement; the cap the same as in other fluid lamps. By these means the accidents from breaking the glass would be prevented. It appears from the specifications that the object of both parties was the same—namely, to guard against the danger from the use of camphene in the common glass lamps, which both proposed to effect by a metallic lining; and though neither the glass nor the metallic lining (separately) might be deemed a patentable invention, yet in their combined use it would be otherwise. The evidence (setting aside the testimony of Newell) shows that the means used by each of the parties are so very much alike in other respects that the question is narrowed down to this, whether, for the purpose stated, there is in principle a difference between a metallic dome and a glass dome.

I need only to state what is a well-settled principle on the subject to show what must be the conclusion: "The first and original inventor is entitled to protection against all other means of carrying the principle into effect."

In the case of Gray v. James [Case No. 5,718], Washington, J., applied the same doctrine to an improvement in the art of making nails by means of a machine which cuts and heads the nails at one operation—holding that where two machines are substantially the same, and operate in the same manner to produce the same result, they must be in principle the same; and that when the same result is referred to as the test, it must mean the same kind of result, though it may differ in extent.

Governed by this rule, I must come to the conclusion that in this case the principle of the invention in the two lamps in the present case is the same, and that the appellee, being the first and original inventor, has the prior right, and that the decision of the commissioner on all the points of controversy in this case ought to be affirmed.

---

NICHOLS (KNOWLES v.). See Case No. 7,-897.

NICHOLS (NATIONAL PARK BANK v.). See Cases Nos. 10,047 and 10,048.